UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KENNETH G.[1], ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:22-cv-891 |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the Commissioner filed by the plaintiff, Kenneth G., on October 24, 2022. For the reasons below, the decision of the Commissioner is **AFFIRMED.**

*Background*

The plaintiff, Kenneth G., filed an application for Supplemental Security Income on March 8, 2016, alleging a disability onset beginning in February 2016. (Tr. 183-84). The Disability Determination Bureau denied Kenneth G.'s application initially on July 22, 2016, and again upon reconsideration on September 26, 2016. (Tr. 120, 125). Kenneth G. subsequently filed a timely request for a hearing on November 4, 2016. (Tr. 132). A hearing was held in August 2018, before Administrative Law Judge (ALJ) Gladys Whitfield (Tr. 28-83). Following the hearing, the ALJ issued an unfavorable decision on September 26, 2018. (Tr. 8-10). The Appeals Council denied review making the ALJ's decision the final decision of the Commissioner. (Tr. 1-4). The decision was later appealed to the United States District Court on August 22, 2019. (Tr. 1780-89). On November 30, 2020, the District Court reversed the decision

---

[1] To protect privacy, the plaintiff's full name will not be used in this Order.

of the ALJ and remanded the case for further proceedings. (Tr. 1790-1805).

While his appeal was pending in District Court, Kenneth G. filed a second application for disability benefits. (Tr. 2212-19). On December 21, 2020, ALJ Belinda Brown issued a favorable decision approving Kenneth G.'s claim for benefits, finding him disabled since September 27, 2018 (Tr. 1931-39). Given the two separate but related cases, the Appeals Council issued an order vacating the December 2020 favorable decision and remanding both cases to an ALJ to consolidate the claims and issue a new decision. (Tr. 1944-46). Following the order, a hearing was held on December 7, 2022, before ALJ Jessica Hodgson. (Tr. 1728-79). Vocational Expert (VE) Marie Barhydt testified at the hearing. (Tr. 1678). On February 9, 2022, the ALJ issued an unfavorable decision. (Tr. 1675-1720). On August 24, 2022, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner. (Tr. 1668-71).

At step one of the five-step sequential analysis for determining whether an individual is disabled, the ALJ found that Kenneth G. had a continuous 12-month period in which he did not engage in substantial gainful activity. (Tr. 1681).

At step two, the ALJ determined that Kenneth G. had the severe impairments of obesity; lumbosacral degenerative disc disease and spondylosis; mild facet arthropathy of the lumbar spine; lumbar radiculopathy; bilateral knee osteoarthritis; bilateral patellar spurring; moderate to severe bilateral ulnar neuropathies at the wrists (carpal tunnel syndrome ("CTS")); biceps tendonitis, brachial plexopathy, and cubital tunnel syndrome on the left upper extremity; status-post pain pump implant (09/30/19); axonal left peroneal motor mononeuropathy; polyneuropathy; pancreatic pseudocyst; diffuse hepatic steatosis; chronic pancreatitis; mild diffuse fatty liver; diabetes mellitus; chronic pain; fibromyalgia; and depression. (Tr. 1681).

At step three, the ALJ concluded that Kenneth G. did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526). (Tr. 1682). The ALJ found that no medical evidence reflected diagnostic findings that satisfied any listed impairment. (Tr. 1682-85).

After consideration of the entire record, the ALJ then assessed Kenneth G.'s "residual functional capacity" (RFC) as follows:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except not off task or away from work station while needing to alternate sitting or standing; standing for 3 minutes, after every 30 minutes of sitting; standing for 6 hours, alternate to sitting for 5 minutes, after every 30 minutes of standing, walking for 6 hours, alternate to sitting for 5 minutes, after every 30 minutes of walking; push/pull as much as can lift/carry; he can operate foot controls with the right foot frequently; he can operate foot controls with left foot frequently; he can operate hand controls with right hand frequently; operate hand controls with left hand frequently; frequently reach overhead to the left, and frequently reach overhead to the right; handle items frequently with the left hand, and frequently with the right hand; finger frequently with the left hand, and frequently with the right hand; feel frequently on the left, and frequently on the right; climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, never crawl; work at unprotected heights occasionally; never work with moving mechanical parts; never operate a motor vehicle; occasional exposure to vibration; able to perform simple, routine tasks; and he is able to perform simple work-related decisions.

(Tr. 1689). The ALJ found that Kenneth G.'s medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. (Tr. 1690). That said, she found that the Kenneth G.'s statements related to the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 1690-1705).

At step four, the ALJ found that Kenneth G. could have performed the requirements of

3

representative occupations such as a routing clerk, mail clerk, and cashier. (Tr. 1790). Consequently, the ALJ found that Kenneth G. had not been under a disability, as defined in the Social Security Act, at any time from February 4, 2016, the alleged onset date, through September 20, 2020, the date last insured. (Tr. 1720).

## *Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736 F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence."). Courts have defined substantial evidence as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 852 (1972) (quoting ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see* ***Bates***, 736 F.3d at 1098. A court must affirm an ALJ's decision if the ALJ supported her findings with substantial evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir. 2013) (citations omitted). Yet "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez ex rel. Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).

Disability insurance benefits are available only to individuals who can establish a "disability" under the Social Security Act. The claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A).** The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §§ 404.1520, 416.920.** The ALJ first considers whether the claimant is employed and "doing . . . substantial gainful activity." **20 C.F.R. §§ 404.1520(b), 416.920(b).** If he is, the claimant is not disabled, and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. §§ 404.1520(c), 416.920(c)**; see **Williams v. Colvin**, 757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of the claimant's impairments). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1.** If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. §§ 404.1520(e), 416.920(e).** That said, if the claimant shows that his impairment is so severe that he cannot engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, considering his age, education, job experience, and functional capacity to work, is able to perform other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1520(f), 416.920(f);** see **Biestek v. Berryhill,** 139 S. Ct. 1148 (2019) (upon the disability benefits applicant's request, vocational expert's refusal to provide the

private market-survey data underlying his opinion regarding job availability does not categorically preclude the expert's testimony from counting as "substantial evidence" but, instead, the inquiry is case-by-case).

Kenneth G. has requested that the court remand this matter for additional proceedings and makes the following arguments in favor of remand: The ALJ's conclusion that he could stand and/or walk for six hours in an eight-hour workday was not supported by substantial evidence; the ALJ's analysis of his subjective symptoms was not consistent with the guidance of SSR 16-3p nor supported by substantial evidence; the ALJ impermissibly interpreted medical evidence; the analysis of opinion evidence was not supported by substantial evidence; and that the Step Five conclusion was not supported by substantial evidence.

### A.     Residual Functional Capacity

Kenneth G. contends that the ALJ's finding that he could stand and/or walk for six hours in an eight-hour workday was not supported by substantial evidence. According to Kenneth G., the ALJ failed to explain how she reached her conclusion and did not adequately address conflicting medical evidence such as his decreased sensation, non-palpable pulse, neuropathy, and antalgic gait.

The Residual Functional Capacity ("RFC") is a measure of what an individual can do despite his limitations. ***Young v. Barnhart***, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1). The "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The relevant evidence of the individual's ability to do work-related activities includes medical history; medical signs and

laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. The determination of a claimant's RFC is a legal decision rather than a medical one. ***Diaz v. Chater***, 55 F.3d 300, 306 n.2 (7th Cir. 1995); *see also* ***Thomas v. Colvin***, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)).

An "ALJ is not required to address every piece of evidence or testimony presented." ***Getch v. Astrue****,* 539 F.3d 473, 480 (7th Cir. 2008). Rather, the ALJ's RFC determination must provide a "logical bridge" between the evidence and her conclusion. *Id.* (quoting ***Clifford v. Apfel****,* 227 F.3d 863, 872 (7th Cir. 2000). In doing so, the ALJ must provide a narrative discussion describing how the medical evidence of record supports the RFC finding. SSR 96–8p. The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*

In her decision, the ALJ provided a thorough analysis (nearly 6 pages) of Kenneth G.'s medical evidence of impairments when explaining her finding on his residual functional capacity. (Tr. 1691-1697). Contrary to Kenneth G.'s assertion, the ALJ adequately addressed the medical evidence, both favorable and unfavorable, in rendering her decision. The ALJ addressed the evidence related to Kenneth G.'s antalgic and limping gate, neuropathy, and decreased sensation. (Tr. 1693, 1695, 1696). Yet the ALJ also addressed numerous conflicting medical records indicating that Kenneth G. had a normal gait, good sensation, and strength, and active range in his extremities. (Tr. 1691-1697). After considering the medical evidence, the ALJ

7

concluded that Kenneth G.'s "reduced range of motion, pain, and antalgic limp gate, at times, support limiting [Kenneth G.] to less than a full range of light exertion, and with the sit/stand option." (Tr. 1697).

The ALJ's exhaustive review of Kenneth G.'s medical records provided adequate support for her RFC determination. Kenneth G. did not point to any medical record that the ALJ ignored in her analysis to bring her determination into question. If substantial evidence supports the ALJ's determination, the court must affirm the decision even if "reasonable minds could differ concerning whether [the claimant] is disabled." **Elder v. Astrue**, 529 F.3d 408, 413 (7th Cir. 2008).

**B.      Subjective Symptoms**

Next, Kenneth G. argues that the ALJ's analysis of his subjective symptoms was not consistent with the guidance under SSR-16-3 nor supported by substantial evidence. Kenneth G. contends that the ALJ failed to build a logical bridge to support the finding that he could sustain the prescribed level of standing and walking with his combination of severe bilateral lower extremity neuropathy and abdominal pain.

An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. **Shideler v. Astrue**, 688 F.3d 306, 310-11 (7th Cir. 2012). Still, an ALJ must explain her evaluation with specific reasons supported by the record. **Pepper v. Colvin**, 712 F.3d 351, 367 (7th Cir. 2013). Under SSR 16-3p, an ALJ must assess the claimant's subjective symptoms rather than assessing her "credibility."

The ALJ first must determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce his symptoms. SSR 16-3p, 2016 WL 1119029, at *2. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting

effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2016 WL 1119029, at *2. An individual's statements about the intensity and persistence of the pain may not be disregarded because they are not substantiated by objective medical evidence. SSR 16-3p, 2016 WL 1119029, at *5. In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. SSR 16-3p, 2016 WL 1119029, at *4, 9.  The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

>   (i)     The individual's daily activities;
>
>   (ii)    Location, duration, frequency, and intensity of pain or other symptoms;
>
>   (iii)   Precipitating and aggravating factors;
>
>   (iv)    Type, dosage, effectiveness, and side effects of any medication;
>
>   (v)     Treatment, other than medication, for relief of pain or other symptoms;
>
>   (vi)    Other measures taken to relieve pain or other symptoms;
>
>   (vii)   Other factors concerning functional limitations due to pain or other symptoms.

See **20 C.F.R. §404.1529(c)(3).**

The ALJ must justify her assessment with "specific reasons supported by the record." **Pepper v. Colvin**, 712 F.3d 351, 367 (7th Cir. 2013). Moreover, "the ALJ must explain her subjective symptoms evaluation in such a way that allows [the Court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." **Murphy v. Colvin**, 759 F.3d 811, 816 (7th Cir. 2014); see SSR 16-30, 2017 WL 5180304, at *10 (Oct. 25, 2017) (The ALJ's decision "must contain specific reasons

9

for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."). "[T]he absence of objective medical corroboration for a complainant's subjective accounts of pain does not permit an ALJ to disregard those accounts." **Ghiselli v. Colvin**, 837 F.3d 771, 777 (7th Cir. 2016); *see also* **Moore v. Colvin**, 743 F.3d 1118, 1125 (7th Cir. 2014) ("[T]he ALJ erred in rejecting [the plaintiff]'s testimony on the basis that it cannot be objectively verified with any reasonable degree of certainty. An ALJ must consider subjective complaints of pain if a claimant has established a medically determined impairment that could reasonably be expected to produce the pain.").

The ALJ considered Kenneth G.'s subjective complaints of pain along with his testimony about his daily activities, which included spring cleaning and working outside. (Tr. 1698-99). The ALJ noted an incident that occurred in February 2020, when a cinderblock fell on Kenneth G.'s foot while he was working outside with his son. (Tr. 1698-99). The ALJ reasoned that lifting "cinderblocks while contemporaneously alleging disabling physical functional limitations is entirely inconsistent." (Tr. 1699). Kenneth G. claims that the ALJ erred in considering the cinderblock incident because he did not actually lift the cinderblock and instead claims that his son accidentally dropped it on his foot. Nevertheless, notes during a follow-up visit after the incident revealed that Kenneth G. "and his son were carrying cinderblocks." (Tr. 2778).

Irrespective of which event happened, the ALJ pointed to additional evidence that Kenneth G. reported doing much better in April 2020 and was more active, participating in spring cleaning with his wife. (Tr. 1699). The ALJ did not discount the evidence favorable to Kenneth G. when evaluating his subjective complaints of pain but evaluated them in context with the medical record as a whole. This included considering Kenneth G.'s obesity and fibromyalgia

symptoms along with the objective medical evidence in the record. In doing so, the ALJ considered the longitudinal record since fibromyalgia symptoms can wax and wane, in accordance with SSR 12-2p. In doing so, the ALJ concluded that the medical record did "not reflect the degree and frequency of pain one would expect based on [Kenneth G.'s] testimony." (Tr. 1705).

The ALJ did not err in considering and weighing Kenneth G.'s self-reported daily activities. When viewed in its entirety, the ALJ's decision provided thorough consideration of Kenneth G.'s subjective symptoms in balance with the rest of the record.

C.      **Interpretation of Medical Evidence**

Kenneth G. contends that the ALJ impermissibly interpreted medical evidence in her finding that his condition was not as severe as alleged. Kenneth G. challenges the ALJ's conclusion that his pancreatitis stabilized and improved based on an exam finding that his pancreatic cysts "stabilized and even became smaller." (Tr. 1691). Further, Kenneth G. asserts that the ALJ's finding that his diabetes was under adequate control is against the weight of the medical record.

The Seventh Circuit has established that an ALJ may not unilaterally come to medical conclusions, "there is always a danger when lawyers and judges attempt to interpret medical reports and that peril is laid bare here." ***Israel v. Colvin***, 840 F.3d 432 (7th Cir. 2016); citing ***Browning v. Colvin***, 766 F.3d 702, 705 (7th Cir. 2014) (noting that administrative law judges are not permitted to "play doctor"); *see also* ***Blakes ex rel. Wolfe v. Barnhart***, 331 F.3d 565, 570 (7th Cir. 2003); ***Rohan v. Chater***, 98 F.3d 966, 970 (7th Cir. 1996).

Here, the ALJ noted that with treatment, Kenneth G's "pancreatic cysts stabilized and even became smaller." (Tr. 1691). That said, the ALJ did not impermissibly interpret this

11

medical evidence in isolation as Kenneth G. claims. The ALJ merely noted the objective medical evidence about Kenneth G's pseudocysts and pancreatitis alongside the totality of the medical evidence of his impairments over the next six pages. (Tr. 1691-1697). Similarly, the ALJ's discussion of Kenneth G.'s diabetes was not an impermissible interpretation of medical evidence. The ALJ explained that although Kenneth G. has a diabetic condition, test results showed that his "hemoglobin A1C results suggest [Kenneth G.'s] diabetic condition was either quite mild or under adequate control with readings from 6.2-8.1." (Tr. 1692). The ALJ did not impermissibly draw her own conclusion, she then discussed Kenneth G.'s follow-up appointment on April 7, 2020, during which he conveyed he was "doing much better; he was more active; and he was doing spring cleaning with his wife." (Tr. 1697).

Kenneth G. references that the ALJ did not hear input from medical experts at his hearing and impermissibly interpreted the medical evidence on her own. Yet this omits the fact that the ALJ relied on medical opinions from other reviewing physicians including B. Whitely, M.D., and Lee Fischer, M.D. Dr. Whitely assessed Kenneth G.'s functional capacity in March 2020, after reviewing the medical evidence through March 2020. (Tr. 1909). Dr. Fischer answered medical interrogatories in October 2020, after reviewing the medical evidence through November 2018. (Tr. 2974). The ALJ weighed the opinions of each physician throughout her decision and did not supplant her own interpretation of the medical evidence in lieu of medical experts.

Kenneth G. does not agree with the ALJ's interpretation of the medical evidence. In any event, the court may not reweigh evidence, resolve conflicts in the evidence, or make decisions of credibility. **Skinner v. Astrue**, 478 F.3d 836, 841 (7th Cir. 2007); see also **Elder v. Astrue**, 529 F.3d 408, 412 (7th Cir. 2008). The ALJ supported her analysis with substantial

evidence, and so the court will not re-weigh the evidence.

D.     **Analysis of Opinion Evidence**

According to Kenneth G., the ALJ's analysis of the opinion evidence was not supported by substantial evidence. Courts "do not review medical opinions independently but rather review the ALJ's weighing of those opinions for substantial evidence, and only overturn that weighing if no reasonable mind could accept the ALJ's conclusion." **Grotts v. Kijakazi**, 27 F.4th 1273, 1278 (7th Cir. 2022).

ALJs have an obligation to develop the record fully and fairly in order to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." **Otis S. v. Saul**, No. 1:18-cv-372, 2019 WL 7669923, at *2 (N.D. Ind. Dec. 19, 2019) *quoting* **Beardsley v. Colvin**, 758 F.3d 834, 837 (7th Cir. 2014). An ALJ "cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence that points to a disability finding." **Reinaas v. Saul**, 953 F.3d 461, 466 (7th Cir. 2020) (internal quotes omitted). The Social Security Administration's previous regulations entitled the opinions of certain physicians to controlling weight based on their status as a claimant's treating physician, however, the new regulations have done away with this requirement. *See* **20 C.F.R. § 404.1520c** ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)…including those from your medical sources"). Instead, ALJs must consider all medical opinions based on factors set out by the Social Security Administration with supportability and consistency being the most important factors for the ALJ to discuss. **Kaehr v. Saul**, No. 3:19-cv-1171, 2021 WL 321450, at *3 (N.D. Ind. Feb. 1, 2021).

In the instant case, the ALJ considered medical opinions from twelve sources concerning

Kenneth G.'s physical abilities and provided nearly twelve pages detailing her analysis of each. The ALJ adequately described the weight she gave when reviewing each medical opinion. Kenneth G. predominantly objects to the ALJ's decision to grant his treating physician's opinions little weight. Although the ALJ gave little weight to Kenneth G.'s examining physician, Stephen Kennedy, M.D., she provided adequate support for her rationale in doing so. The ALJ explained that Dr. Kennedy's opinions were vague and generally did not provide specific functional limitations. The ALJ also went on to describe in detail each exam conducted by Dr. Kennedy, his opinion, and her analysis of Dr. Kennedy's findings along with the lengthy medical record. (*See e.g.*, Tr. 1706-08, 1712). Overall, Kenneth G. has failed to show that the ALJ erred in her interpretation of the objective medical evidence.

E. The Step Five Conclusion

Finally, Kenneth G. claims that the ALJ's step five conclusion is not supported by substantial evidence. Kenneth G. contends that the proposed jobs (routing clerk, mail clerk, and cashier) would require an accommodation to allow him to be in an alternate position (sit/stand option) every six to ten minutes an hour. Kenneth G. argues that the vocational expert did not elaborate on what she read or how she came to the conclusion on the number of jobs available with a sit/stand option and therefore did not provide substantial evidence to support the step five decision.

A plaintiff seeking disability insurance benefits bears the burden of proof at steps one through four of the ALJ's sequential five-part inquiry; the burden then shifts to the Commissioner at step five. ***Briscoe ex rel. Taylor v. Barnhart***, 425 F.3d 345, 352 (7th Cir. 2005). At this final step, the Commissioner must establish that the plaintiff's RFC allows him to engage in work found in significant numbers in the national economy. 20 C.F.R. §§

404.1520(f), 404.1566. The Commissioner may carry her step-five burden through vocational expert testimony, as long as such testimony is reliable. *See* **Chavez v. Berryhill**, 895 F.3d 962, 968 (7th Cir. 2018) ("[T]he substantial evidence standard requires the ALJ to ensure that the approximation [by the VE] is the product of a reliable method."); **Liskowitz v. Astrue**, 559 F.3d 736, 743 (7th Cir. 2009). "Evidence is not 'substantial' if vital testimony has been conjured out of whole cloth." **Donahue v. Barnhart**, 279 F.3d 441, 446 (7th Cir. 2002) (citations omitted). Yet "[e]stablishing the reliability of a job-number estimate does not require meeting an overly exacting standard." **Chavez**, 895 F.3d at 968. "A VE's estimate will be just that—an estimate." *Id.*

The Dictionary of Occupational Titles (DOT) does not address the subject of sit/stand options. SSR 83–12 addresses the "special situation" when "the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing." SSR 83–12, 1983 WL 31253, at *4 (Jan. 1, 1983). It provides that "[i]n cases of unusual limitation of ability to sit or stand, a [VE] should be consulted to clarify the implications for the occupational base." *Id.*: *see also* 20 C.F.R. § 404.166(e) ("If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert.").

In this case, the ALJ's hypothetical questions to the VE included all of the limitations in her RFC finding. *See* **Indoranto v. Barnhart**, 374 F.3d 470, 474 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question [she] poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record."). In response, the VE identified a significant number of jobs that someone with Kenneth

G.'s age, education, work experience, and RFC could perform. The VE specifically testified that these were jobs that could be performed with a sit/stand option.

Kenneth G. argues that the VE's testimony did not satisfy the step five requirement that the jobs available in the economy be performed with a sit/stand option. At any rate, Kenneth G/ cites no cases to support his contention that the ALJ should obtain additional evidence beyond that of the VE. ***Schmidt v. Astrue***, 496 F.3d 833, 846 (7th Cir. 2007) (Where the ALJ's step five conclusion was supported by substantial evidence by asking "appropriate hypothetical questions to the vocational expert based on his determination of [the plaintiff]'s residual functional capacity, and the vocational expert testified that [the plaintiff] could perform a significant number of jobs."). Moreover, Kenneth G. did not object to the sufficiency of the VE's qualifications, knowledge, or experience at the hearing. Additionally, "the threshold for such evidentiary sufficiency is not high. Substantial evidence ... is more than a mere scintilla." ***Biestek v. Berryhill***, 139 S. Ct. 1148, 1154 (2019) (citations and internal quotation marks omitted). Thus, the ALJ's step five conclusion was justified, and she did not err in utilizing the VE's testimony.

### *Conclusion*

For those reasons, the decision of the Commissioner is **AFFIRMED**.

ENTERED this 21st day of August 2023.

/s/ Andrew P. Rodovich
United States Magistrate Judge
